UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------- X

JONATHAN POYSER,

                      Plaintiff,    **COMPLAINT**

      -against-                    **CV12 2742**

THE CITY OF NEW YORK; DET. THOMAS DELACY;
and P.O. JOHN DOES # 1-5; the individual    ECF Case **GARAUFIS, J.**
defendant(s) sued individually and in
their official capacities,                  Jury Trial Demanded

                        Defendants.

------------------------------------- X    **POLLAK, M.J**

**PRELIMINARY STATEMENT**

      1.    This is a civil rights action in which plaintiff seeks relief for the violation of the plaintiff's rights secured by 42 U.S.C. § 1983; and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Plaintiff's claims arise from an incident that arose on or about January 6, 2011. During the incident, the City of New York, and members of the New York City Police Department ("NYPD") subjected plaintiff to, among other things, false arrest, excessive force, conspiracy, retaliation, and implementation and continuation of an unlawful municipal policy, practice, and custom. Plaintiff seeks compensatory and punitive damages, declaratory relief, an award of costs and attorney's fees,

pursuant 42 U.S.C. §§ 1988, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983, and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

3. Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper here pursuant to 28 U.S.C. § 1391 because some of the acts in question occurred in Kings and Richmond Counties, and the City of New York is subject to personal jurisdiction in the Eastern District of New York.

## PARTIES

5. Plaintiff Jonathan Poyser is a resident of the State of New York, Kings County. At the time of the incident, Jonathan was a college student. Johnathan is African American.

6. At all times alleged herein, the City of New York was a municipal corporation organized under the laws of the State of New York, which violated plaintiff's rights as described herein.

7. At all times alleged herein, defendant Detective Thomas Delacy, was a New York City Police Officer, employed with the Staten Island Robbery Squad, located in Richmond County, New

2

York or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

8. At all times alleged herein, defendants John Does # 1-5 were New York City Police Officers, employed with the Staten Island Robbery Squad, located in Richmond County, New York or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

9. The individual defendants are sued in their individual and official capacities.

## STATEMENT OF FACTS

10. On January 6, 2011, at and in the vicinity of 215 Dean Street, Brooklyn, New York, and the Staten Island Robbery Squad, Staten Island, New York, police officers operating from the Staten Island Robbery Squad, including upon information and belief, defendants Det. Thomas Delacy and P.O. John Does # 1-5, at times acting in concert and at times acting independently, committed the following illegal acts against the plaintiff.

11. Defendants Det. Thomas Delacy and P.O. John Does # 1-5 were "investigating" a robbery of an elderly woman in Staten Island.

12. Their "investigation" was extremely reckless and amounted to, at best, guess work as it concerned Jonathan, and

3

showed contempt for his civil rights and the limitations placed on them as police officers.

13.   From a phone trace they apparently concluded that someone with the names "Doreen Posyer or Darien Poyser" had called the victim's home before the robbery.

14.   The defendants knew that the traced phone was not owned or registered to Jonathan, and that the phone call to the victim, by itself, did not prove that the caller committed the offense.  Anyone could have called the victim, including a person with a wrong number.

15.   The defendants ran the names the associated with the traced phone through their records and found an old record regarding a dismissed and sealed case regarding Jonathan.  Using this sealed information went against New York State law and violated NYPD policy.

16.   The victim did not identify Jonathan, and any identification procedure that the police used was unreliable and highly suggestive as it concerned Jonathan.

17.   Lacking any facts that connected Jonathan to the offense, the defendants chose not to apply for a warrant, since they knew their application would be denied.

18.   Instead the defendants set off after Jonathan to snatch him from his home and interrogate him.

19. The defendants did not attempt to contact Jonathan for questioning.

20. Thereafter, on January 6, 2011, at approximately 5:00 a.m. to 6:00 a.m. defendants Det. Thomas Delacy and P.O. John Does # 1-5, without either consent, an arrest warrant, a search warrant, probable cause, or reasonable suspicion that the plaintiff(s) had committed a crime unlawfully entered plaintiff's home, which is located at 215 Dean Street, Brooklyn, New York.

21. The property (a brownstone) is fenced off from public access, by an iron gate, which encloses the patio, outside staircase, and entrance doors.

22. The plaintiff's mother owns the property, and the plaintiff lives upstairs in a separate upstairs apartment.

23. Plaintiff's mother and brother, and tenants also reside in the brownstone.

24. When the individual defendants arrived at the house, they entered the property, going through the gate.

25. The individual defendants did not have permission to be on the property, had not witnessed any act rising to the level of an exigent circumstance that would justify entering the property without a warrant, and had not

5

been called or asked to provide assistance to any individual at the house or on the property.

26.     Once the individual defendants entered the property, Jonathan and his family were not free to disregard the individual defendants' questions, walk away or leave.

27.     By coming onto the property without a warrant or without exigent circumstances, the individual defendants violated clearly established law and plaintiff's civil rights.

28.     Jonathan's mother requested that the individual defendants leave, but they refused.

29.     Jonathan's mother questioned the defendant officers about the legality of their conduct, but they ignored her.

30.     In the absence of a warrant, the police lied, bullied and threatened their way into the house, claiming that Jonathan was dangerous, while trying to learn what they could about his family.

31.     The defendant officers were threatening and abusive in the extreme.  They would not take no for an answer.

32.     Jonathan's mother was afraid that the defendant officers would harm Jonathan, or her and her family.

33.     The defendant officers said that: We need to see your son, but we don't want to be killed.

6

34. Jonathan's mother had no idea what the defendant officers were talking about.

35. The defendant officers forced Jonathan's mother to go up the stairs to Jonathan's apartment, using her as a shield.

36. Jonathan was asleep in bed with his girlfriend when he heard a loud banging noise.

37. Jonathan was dressed only in his underwear.

38. Jonathan got out of bed and started to open his door when the defendants threw it open.

39. Some of the defendant officers had their hands on their firearms, while other had them drawn.

40. The defendant officers told the plaintiff he had to come with them, and that they did not care if they had to take him in his underwear.

41. Jonathan and his mother asked the defendants for a warrant, and why they wanted to question Jonathan, but the defendant officers refused to answer them, and dissembled to avoid the fact they had no warrant.

42. They made it clear to Jonathan that he had better get dressed or they would simply take him.

43. Jonathan knew he had done nothing wrong, but he was afraid for his and his family's safety, so he dressed while the officer's watched.

44. Once dressed, the defendant officers rushed him, grabbing him, twisted his arms behind his back, and placed handcuffs on him. The handcuffs cut into his wrists and cut off his circulation.

45. Jonathan and his family demanded his release, but the officers ignored them as they stole Jonathan from his home to an awaiting police car, subjecting him to a "perp walk" in his own neighborhood.

46. The defendant officers then drove Jonathan to the 120th Precinct in Staten Island, New York.

47. At the Precinct, the defendant officers placed Jonathan in locked room, while Det. Delacy and another officer interrogated him.

48. They accused him committing the robbery, although they had no proof of his involvement in the offense.

49. They repeatedly threatened to "throw" him in a line-up if he did not confess. He would not, and there was no line-up.

50. They repeatedly threatened to send him to prison if he did not confess. Still, he would not confess.

51. They asked him if new any Albanians, or a Darien or Doreen Poyser. He answered that he did not.

52. They threatened and abused Jonathan by, among other things, threatening to continue to hold him incognito and questioning him about his family, and told him that he had to sign a form regarding his arrest. The individual defendant did this to cover up their misconduct.

53. Jonathan repeatedly told them they had the wrong person despite their threats and intimidation tactics because he was innocent.

54. After six hours of interrogating Jonathan, the defendants finally released Jonathan, and Det. Delacy apologized to Jonathan and drove him back to Brooklyn to make it appear that it was just a misunderstanding in an attempt to minimize the actual harm the police had inflicted on Jonathan and the contempt they showed for the law.

55. The individual defendants acted in concert in committing the above-described illegal acts against the plaintiff(s).

56. The plaintiff did not resist arrest at any time during the above-described incident.

57. The plaintiff did not violate any law, regulation, or administrative code; commit any criminal act; or act in a suspicious or unlawful manner in relationship to, or during the above-described incident.

58. The individual defendants did not observe the plaintiff violate any law, regulation, or administrative code; commit any criminal act; or act in a suspicious or unlawful manner in relationship to, or during the above-described incident.

59. At no time prior to, during or after the above-described incident were the individual defendants provided with information, or in receipt of a credible or an objectively reasonable complaint from a third person, that plaintiff had violated any law, regulation, or administrative code; committed any criminal act; or acted in a suspicious or unlawful manner prior to or during the above-described incident

60. The individual defendants acted under pretense and color of state law and their individual and official capacities and within the scope of their employment. Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff(s) of his or her (their) rights.

61. The unlawful entry into plaintiff's house was caused by the City of New York's policy, custom, and practice of permitting individual police officers to intrude into the homes of individuals without a search warrant or an arrest warrant.

62. Even when individual police officers have probable cause to arrest an individual who is inside a house, it is the City of New York's policy, custom, and practice to fail to ensure that the officers secure the premises and apply to the court for a warrant.

63. When police officers are charged with protecting the public safety, they must respect constitutional rights in the process. The NYPD and its officers disregard their duties, specifically to New York City residents, by crossing a constitutional line between reasonable inquiry and illegal intrusiveness. Under any law, a citizen insisting that police officers recognize that absent exigent circumstances, they must have a warrant to enter a home, does not create a founded suspicion or a basis for an arrest, and when a person complains and asserts this right, continued police harassment does not pass legal muster. The NYPD must stop harassing citizens who exercise their constitutional rights. Citizens should be able to be secure in their homes without fear of intrusion by the NYPD.

64. As a direct and proximate result of the defendants' actions plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

65. Plaintiff is entitled to receive punitive damages from the individual defendants because the individual defendants' actions were motivated by extreme recklessness and indifference to plaintiff's rights.

### FIRST CLAIM

**(UNLAWFUL SEARCH AND SEIZURE UNDER FEDERAL LAW)**

66. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

67. Defendants unlawfully entered and seized the plaintiff in his home without a warrant, or consent.

68. Accordingly, defendants are liable to plaintiff for unlawful search and seizure under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## SECOND CLAIM

### (FALSE ARREST UNDER FEDERAL LAW)

69. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein

70. Defendants falsely arrested plaintiff without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime.

71. Accordingly, defendants are liable to plaintiff for false arrest under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## THIRD CLAIM

### (EXCESSIVE FORCE)

72. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

73. The individual defendants' use of force upon plaintiff was objectively unreasonable.

74. The individual defendant officers did not have an objective and/or reasonable basis to use any degree of force against plaintiff since they did not have warrant to arrest the plaintiff, and the plaintiff was unarmed, compliant, and did not resist arrest.

75. Those defendants who did not touch the plaintiff, witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

76. Accordingly, the defendants are liable to plaintiff for using unreasonable and excessive force, pursuant to 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## FOURTH CLAIM

### (RETALIATION CLAIM)

77. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

78. The plaintiff(s) exercised free speech and association during the incident by, among other things, telling the individual defendants that the plaintiff(s) had not committed a crime, demanding to see a warrant, and complaining that the defendants' conduct was unlawful.

79. The use of free speech by the plaintiff(s) was a motivating factor in the individual defendants' decision to arrest, and prosecute the plaintiff(s).

80. Accordingly, the individual defendants are liable to plaintiff under the First Amendment to the United States Constitution.

## FIFTH CLAIM

### (42 U.S.C. § 1983 CONSPIRACY)

81. Plaintiff(s) repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

82. Defendants are liable to plaintiff(s) because they agreed to act in concert to inflict an unconstitutional injury; and committed an overt act done in furtherance of that goal causing damage to plaintiff(s).

## SIXTH CLAIM

### (MONELL CLAIM)

83. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

84. The City of New York, through a policy, practice and custom, directly caused the constitutional violations suffered by plaintiffs.

85. Upon information and belief, the City of New York, at all relevant times, was aware that the defendants were unfit officers who have previously committed the acts alleged herein, have a propensity for unconstitutional conduct, or have been inadequately trained.

86. Nevertheless, the City of New York exercised deliberate indifference by failing to take remedial action. The

City failed to properly train, retrain, supervise, discipline, and monitor the individual defendants and improperly retained and utilized them.  Moreover, upon information and belief, the City of New York failed to adequately investigate prior complaints filed against the individual defendants.

87. Further, the City of New York was aware prior to the incident that the individual defendants (in continuation of its illegal custom, practice and/or policy) would enter the houses of individuals without warrants or exigent circumstances.

88. In addition, the following are municipal policies, practices and customs: (a) entering homes without warrants, (b) arresting innocent individuals, based on a pretext and without warrants, (c) using excessive force against individuals, (d) retaliating against individuals who engage in free speech, and (e) coercing people to sign waivers during interrogations.

**WHEREFORE**, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

    a.    Compensatory damages in an amount to be determined by a jury;

    b.    Punitive damages in an amount to be determined by a jury;

      c.    Costs, interest and attorney's fees, pursuant to 42 U.S.C. § 1988; and

      d.    Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:    Brooklyn, New York
            May 29, 2012

                              MICHAEL O. HUESTON, ESQ.
                              *Attorney for Plaintiff*
                              16 Court Street, Suite 3301
                              Brooklyn, New York 11241
                              (212) 246-2900
                              mhueston@nyc.rr.com
                              By: _____
                              MICHAEL O. HUESTON